IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN ALQUIN, Individually and as Administrator Pendente Lite of the ESTATE OF EUGENE W. ALQUIN, JR., | : : : : | CIVIL ACTION NO. 23-1586 JURY TRIAL DEMANDED. |
| Plaintiff, | : | |
| -v- | : : | |
| UNITED STATES OF AMERICA, | : : | |
| Defendant. | : | |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes PLAINTIFF, KAREN ALQUIN, Individually and as Administrator Pendente Lite of the ESTATE OF EUGENE W. ALQUIN, JR., by and through her attorneys, Michael A. Murphy, Esquire, John D. Perkosky, Esquire, Benjamin J. Gobel, Esquire, Debra B. Parma, Esquire, and the law firm of Ogg, Murphy & Perkosky, P.C., and files the instant Complaint in Civil Action, averring as follows:

**PLAINTIFF**

1.  At all times relevant to this action, EUGENE W. ALQUIN, JR., deceased, (hereinafter "MR. ALQUIN" and/or "DECEDENT"), was a resident of Evans City, Pennsylvania.

2.  On or about August 18, 2022, KAREN ALQUIN (hereinafter "MRS. ALQUIN" and/or "PLAINTIFF"), was appointed Administrator Pendente Lite of the ESTATE OF EUGENE W. ALQUIN, JR., by the Register for the Probate of Wills in and for Beaver County, in the Commonwealth of Pennsylvania, at Number 04-22-00917.

3.  PLAINTIFF, as Administrator Pendente Lite of the ESTATE OF EUGENE W. ALQUIN, JR., brings this action on her behalf and on behalf of all persons entitled to recover

damages for the wrongful death of MR. ALQUIN, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, and 2671, et seq., and 42 Pa. C.S.A. § 8301.  PLAINTIFF also brings this action to recover damages on behalf of the ESTATE OF EUGENE W. ALQUIN, JR., pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, and 2671, et seq., and 42 Pa. C.S.A. § 8302.

4. Persons entitled to recover damages for MR. ALQUIN's wrongful death, their relationship to DECEDENT, and their addresses are as follows:

   a. Karen Alquin (wife), 136 Lynwood Drive, Evans City, PA 16033; and

   b. Susanne McGuinness (daughter), 136 Lynwood Drive, Evans City, PA 16033.

5. During his lifetime, MR. ALQUIN did not commence any action to recover for damages for the injuries that caused his death, and no other action has been filed to recover damages for the wrongful death of MR. ALQUIN.

**DEFENDANT**

6. Defendant, UNITED STATES OF AMERICA (hereinafter "UNITED STATES"), maintains the United States Department of Veterans Affairs and its divisions and subdivisions.

7. The United States Department of Veterans Affairs was established by Congress, in part, to administer a governmental healthcare system for military veterans of the UNITED STATES and includes within its purview administration of the Veterans Affairs Healthcare System ("VA Healthcare System").

8. The VA Healthcare System providers healthcare to veterans including medical, nursing, surgical, and rehabilitative care for eligible veterans who served in the Armed Forces of the UNITED STATES.

9. The Veterans Affairs Pittsburgh Healthcare System ("VA Pittsburgh Healthcare System") is a division of the United States Department of Veterans Affairs, and provides

healthcare to veterans at medical facilities, including the Pittsburgh VA Medical Center, University Drive Facility, and the H. John Heinz III Department of Veterans Affairs Medical Center, in Pittsburgh, Pennsylvania (collectively "Pittsburgh VA Hospital").

10. Pittsburgh VA Hospital is an acute care facility providing medical, surgical, nursing, and critical care.

11. PLAINTIFF is asserting a professional negligence claim against Defendant UNITED STATES.

12. At all times relevant hereto, Defendant UNITED STATES was acting by and through its duly authorized agents, servants, and/or employees, ostensible or otherwise, who were then and there acting within the course and scope of their employment or agency, including the Pittsburgh VA Hospital, David Suski, M.D. (hereinafter "Dr. Suski"), Joseph Kovacs, M.D. (hereinafter "Dr. Kovacs"), Michael Porter, M.D. (hereinafter "Dr. Porter"), Ruth Preisner, M.D. (hereinafter "Dr. Preisner"), Steven Borson, M.D. (hereinafter "Dr. Borson"), Vida Almario Passero, M.D. (hereinafter "Dr. Passero"), Kathan Chintamaneni, M.D. (hereinafter "Dr. Chintamaneni"), Alex Myint, M.D. (hereinafter "Dr. Myint"), Brian Kocak, M.D. (hereinafter "Dr. Kocak"), Elyse Johnston, M.D. (hereinafter "Dr. Johnston"), Natalia Priscilla Arizmendez, M.D. (hereinafter "Dr. Arizmendez"), and Christopher R. Brackney, M.D. (hereinafter "Dr. Brackney").

13. At all relevant times hereto, Pittsburgh VA Hospital owned, controlled, operated, maintained, traded and/or conducted business as a healthcare system organized as a division of the United States Department of Veterans Affairs, and was at all times relevant hereto in the control of the government of the UNITED STATES.

## JURISDICTION AND VENUE

14. This action is brought against the UNITED STATES pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, and 2671, et seq.

15. By letter dated August 18, 2022, PLAINTIFF served the Office of Chief Counsel and the Department of Veterans Affairs Office of General Counsel Torts Law Group, an executed Standard From 95, Claim or Damage, Injury, or Death ("Form 95"), providing notice to the UNITED STATES, of claims on her behalf, Individually, and as Administratrix of the ESTATE OF EUGENE ALQUIN, JR.

16. On or about September 28, 2022, Lisa Hosman-Davis, Supervisory Paralegal for the United States Department of Veterans Affairs, sent a letter to counsel for PLAINTIFF, which acknowledged receipt of PLAINTIFF's Form 95. Therefore, over six (6) months have passed since the United States Department of Veterans Affairs acknowledged receipt of PLAINTIFF's Form 95.

17. On or about March 6, 2023, Kristen Nelson, Deputy Chief Counsel of the United States Department of Veterans Affairs Office of Regional Counsel, sent a letter to counsel for PLAINTIFF, which indicated that PLAINTIFF's claim was denied. The instant matter is being filed within six (6) months of the mailing of the aforementioned notice.

18. Venue is proper within this district, pursuant 28 U.S.C. § 1402(b), as the acts complained of occurred in the Western District of Pennsylvania.

19. The above captioned matter is being brought against the UNITED STATES pursuant to 28 U.S.C. § 1346, et seq., and 28 U.S.C. §2671, et seq., for money damages, compensation for personal injuries that were caused by the negligence and wrongful acts or omissions of the employees of the UNITED STATES, while acting within the course and scope

of their offices and employment, under circumstances where the UNITED STATES, if a private person, would be liable to PLAINTIFF in accordance with the laws of the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

20. On or about August 23, 2020, MR. ALQUIN presented to the Pittsburgh VA Hospital emergency department, with reports of persistent and occasionally bloody diarrhea, nausea, vomiting, and worsening dysphagia and odynophagia.

21. MR. ALQUIN's medical history was positive for Stage I adenocarcinoma of the rectosigmoid, which was treated with surgical resection, in 2014. In June 2020, MR. ALQUIN was diagnosed with a locoregional recurrence of his colorectal cancer. In July 2020, MR. ALQUIN was started on chemo- and radiation therapy to treat the same.

22. In the emergency department, MR. ALQUIN was under the care of Dr. Kovacs and Dr. Suski. It was noted that MR. ALQUIN's rectal exam was positive for blood, and that his vital signs were T 97.3; HR 102; RR 22; BP 161/76. His lab results were recorded as follows: WBC 3.2, H/H 14.9/39.9, Plt 345, Glu 407, BUN 56, Cr 2.5, K 3.2, Na 128, AST 46, Mag 2.4, INR 1.6, Lactate 3.3, and Anion Gap 17.2. MR. ALQUIN was aggressively rehydrated, and he was admitted to the hospital.

23. Upon admission, MR. ALQUIN was under the care of Dr. Porter and Dr. Preisner. MR. ALQUIN was volume resuscitated with IV fluids. Based upon his presentation and history, gastroenterology was consulted. His symptoms remained ongoing.

24. On or about August 24, 2020, MR. ALQUIN was under the care of Dr. Kocak, Dr. Porter, Dr. Preisner, Dr. Borson, and Dr. Passero. He was also evaluated by Dr. Chintamaneni and Dr. Myint from the gastroenterology service. His lab results were recorded as follows: WBC 6.6,

H/H 15.2/41.7, Plt 294, Glu 350, BUN 56, Cr 2.04, K 3.4, Na 131, AST 32, Anion Gap 12.4, Chloride 105, CO2 17, and Albumin 2.8. Dr. Chintamaneni and Dr. Myint opined that MR. ALQUIN's worsening odynophagia symptoms "may be esophagitis," secondary to his chemotherapy. An EGD was planned for the following day. Regarding MR. ALQUIN's diarrhea, it was noted to be "likely multifactorial given recent initiation of chemotherapy." During this time, MR. ALQUIN's symptoms remained ongoing, now with emesis and tachycardia, and aggressive fluid resuscitation continued.

25. On or about August 25, 2020, MR. ALQUIN was under the care of Dr. Kocak, Dr. Preisner, Dr. Porter, Dr. Chintamaneni, and Dr. Myint. His lab results remained abnormal, showing hyponatremia, hypokalemia, hyperchloremia, a worsening BUN/creatine, a higher Anion gap, as well as an elevated INR. Based upon his status and concerning labs, a decision was made not to proceed with the EGD. It was rescheduled for the following day. During this time, MR. ALQUIN's symptoms remained ongoing, now with hematemesis, and aggressive fluid resuscitation continued.

26. On or about August 26, 2020, MR. ALQUIN was under the care of Dr. Kocak, Dr. Preisner, Dr. Porter, Dr. Chintamaneni, and Dr. Johnston. His labs continued to show signs of metabolic acidosis and an acute kidney injury. Based upon his multiple electrolyte disturbances and serum abnormalities, as well as tachycardia and an elevated INR, the EGD was again postponed. Throughout the day, MR. ALQUIN's symptoms remained ongoing, with his diarrhea and dysphagia remaining "about the same." Aggressive fluid resuscitation continued.

27. On or about August 27, 2020, at approximately 6:09 a.m., nursing documented that MR. ALQUIN was found unresponsive, having experienced a pulseless electrical activity ("PEA") cardiac arrest. It was noted that this was "likely due to aspiration and metabolic acidosis." A code

was called, Advanced Cardiovascular Life Support ("ACLS") measures were initiated, Dr. Arizmendez and Dr. Brackney responded, and MR. ALQUIN was intubated. After an extended period of time, return of spontaneous circulation was achieved, and MR. ALQUIN was transferred to an ICU.

28. Over the next several days, MR. ALQUIN remained critically ill, with a severely compromised neurological status. He required ventilator support for respiratory failure.

29. On or about September 1, 2020, an EEG was performed, which showed some activity but was consistent with hypoxic metabolic encephalopathy.

30. On or about September 2, 2020, when there were no signs of improvement in MR. ALQUIN's neurologic condition, his status was transitioned to comfort measurements only. At approximately 12:00 p.m., MR. ALQUIN was extubated to room air.

31. On September 2, 2020, at 12:29 p.m., MR. ALQUIN was pronounced dead. His Death Certificate lists multiple organ system failure, due to cardiac arrest, as his cause of death.

## COUNT I – WRONGFUL DEATH
## PLAINTIFF
## -v-
## UNITED STATES OF AMERICA

32. PLAINTIFF incorporates Paragraphs 1 through 31 as if fully set forth herein.

33. UNITED STATES had a duty and responsibility to MR. ALQUIN to provide appropriate and competent medical care and treatment, to establish policies and procedures for health care, to employ, select, retain, and/or hire competent medical personnel and had a duty to oversee, supervise and coordinate the efforts of all persons rendering medical care and treatment within its facility.

34. The physical structure, atmosphere and appearance of the Pittsburgh VA Hospital, the allowed use of its facility, the conduct of the physicians, nursing staff, technicians, and all other

health care personnel and various other factors combined to create the appearance that those individuals rendering care to MR. ALQUIN were agents, ostensible agents, servants and/or employees of UNITED STATES.

35. At all relevant times, the Pittsburgh VA Hospital, Dr. Suski, Dr. Kovacs, Dr. Porter, Dr. Preisner, Dr. Borson, Dr. Passero, Dr. Chintamaneni, Dr. Myint, Dr. Kocak, Dr. Johnston, Dr. Arizmendez, and Dr. Brackney, were employees, agents and/or servants of UNITED STATES, and under the control of UNITED STATES.

36. UNITED STATES, directly, and through its officers, directors, as well as through its agents, ostensible agents, servants, and/or employees, namely the physicians, physicians' assistants, nurses, nurses' assistants, and technicians, who were involved in the medical treatment described herein, including the Pittsburgh VA Hospital, Dr. Suski, Dr. Kovacs, Dr. Porter, Dr. Preisner, Dr. Borson, Dr. Passero, Dr. Chintamaneni, Dr. Myint, Dr. Kocak, Dr. Johnston, Dr. Arizmendez, and Dr. Brackney, was negligent and careless in some or all of the following particulars:

   a. In failing to admit MR. ALQUIN to a unit or floor with a higher degree of monitoring;

   b. In failing to admit MR. ALQUIN to an ICU;

   c. In delaying in admitting and/or transferring MR. ALQUIN to a unit or floor with a higher degree of monitoring;

   d. In delaying in admitting and/or transferring MR. ALQUIN to an ICU;

   e. In failing to properly interpret MR. ALQUIN's lab results;

   f. In failing to appropriately respond to MR. ALQUIN's lab results;

   g. In failing to provide appropriate medical care to MR. ALQUIN;

   h. In delaying in responding to MR. ALQUIN's lab results;

i. In failing to properly respond to MR. ALQUIN's dehydration;

j. In providing treatment that caused MR. ALQUIN's kidney function to worsen;

k. In failing to properly treat MR. ALQUIN's kidneys;

l. In providing treatment that caused MR. ALQUIN's metabolic acidosis to progress and/or worsen;

m. In providing negligent medical treatment to MR. ALQUIN while admitted;

n. In attempting to rehydrate MR. ALQUIN in a manner that caused his kidney function and/or metabolic acidosis to worsen;

o. In failing to properly monitor MR. ALQUIN's fluid volume status;

p. In failing to properly manage MR. ALQUIN's fluid volume status;

q. In failing to properly respond to MR. ALQUIN's fluid volume status;

r. In failing to properly evaluate the likelihood that MR. ALQUIN's fluid volume status would worsen;

s. In failing to properly monitor MR. ALQUIN's metabolic acidosis;

t. In failing to properly manage MR. ALQUIN's metabolic acidosis;

u. In failing to properly respond to MR. ALQUIN's metabolic acidosis;

v. In failing to properly treat MR. ALQUIN's metabolic acidosis;

w. In failing to recognize the severity of MR. ALQUIN's metabolic acidosis;

x. In failing to order appropriate tests to evaluate and diagnose MR. ALQUIN's metabolic acidosis;

y. In failing to order and/or recommend a nephrology consult;

z. In delaying in ordering and/or recommending a nephrology consult;

aa. In failing to order and/or recommend a speech therapy consultation;

bb. In failing to order and/or recommend a swallowing assessment;

cc. In failing to properly monitor MR. ALQUIN's condition;

dd. In failing to properly manage MR. ALQUIN's condition;

ee. In failing to properly respond to MR. ALQUIN's condition;

ff. In failing to properly treat MR. ALQUIN's condition;

gg. In failing to recognize the severity of MR. ALQUIN's metabolic acidosis;

hh. In failing to maintain MR. ALQUIN's NPO status until an appropriate evaluating of his swallowing could be performed;

ii. In failing to properly evaluate MR. ALQUIN's dysphagia and odynophagia;

jj. In failing to properly treat MR. ALQUIN's dysphagia and odynophagia;

kk. In failing to properly treat MR. ALQUIN so as to reduce the risk of aspiration;

ll. In failing to properly treat MR. ALQUIN's dysphagia;

mm. In failing to provide treatment to keep MR. ALQUIN from aspirating;

nn. In failing to prevent MR. ALQUIN from aspirating;

oo. In failing to order appropriate consultations with specialists who could evaluate and respond to MR. ALQUIN's condition;

pp. In providing treatment that increased the risk of aspiration;

qq. In failing to properly diagnose MR. ALQUIN's cardiac condition;

rr. In failing to properly care for MR. ALQUIN's cardiac condition;

ss. In failing to properly manage MR. ALQUIN's cardiac condition;

tt. In failing to properly treat MR. ALQUIN's cardiac condition;

uu. In failing to recognize the severity of MR. ALQUIN's cardiac condition;

vv. In failing to properly evaluate the likelihood that MR. ALQUIN's cardiac condition would continue to worsen;

ww. In failing to properly assess MR. ALQUIN for cardiac conditions;

xx. In failing to order appropriate tests to evaluate and diagnose MR. ALQUIN's cardiac condition;

yy. In failing to timely diagnose and/or treat MR. ALQUIN's cardiac condition;

zz. In failing to timely and properly evaluate MR. ALQUIN's cardiac condition;

aaa. In failing to timely and adequately respond to MR. ALQUIN's deteriorating cardiac condition;

bbb. In misreading and/or misinterpreting the results of MR. ALQUIN's diagnostic studies and/or tests;

ccc. In delaying in obtaining additional diagnostic studies and/or tests;

ddd. In failing to obtain additional diagnostic tests to evaluate MR. ALQUIN;

eee. In failing to adequately and timely investigate the etiology of MR. ALQUIN's condition;

fff. In failing to properly and timely prescribe and administer medications to treat MR. ALQUIN's condition;

ggg. In prescribing and/or administering medications that caused and/or contributed to MR. ALQUIN's condition;

hhh. In failing to prevent MR. ALQUIN's cardiac arrest;

iii. In failing to properly treat MR. ALQUIN's metabolic acidosis so as to avoid his cardiac arrest;

jjj. In delaying in responding to MR. ALQUIN's cardiac arrest;

kkk. In failing to properly respond to MR. ALQUIN's cardiac arrest;

lll. In failing to ensure MR. ALQUIN would have available to him the services of physicians, nurses, and technicians skilled to properly diagnose and treat his condition;

mmm. In failing to be staffed with a sufficient number of properly trained and competent personnel to diagnose and treat his condition, including physicians, nurses, and technicians;

nnn. In negligently employing and/or having on staff personnel, including physicians, nurses, and technicians, who were not adequately trained to diagnose and treat MR. ALQUIN's condition;

ooo. In failing to formulate, adopt, and enforce adequate rules and policies to ensure the proper diagnosis of conditions;

ppp. In failing to select and retain competent and qualified physicians, nurses, and technicians and to have them on duty during MR. ALQUIN's care and treatment; and

qqq. In failing to oversee all persons who practice medicine within its facilities to diagnose and treat life-threatening conditions.

37. As the direct and proximate result of the negligence and carelessness of Defendant UNITED STATES and its agents, servants and/or employees, MR. ALQUIN's condition went undiagnosed and/or improperly treated, resulting in his death on September 2, 2020.

38. As a direct and proximate result of the above acts or omissions of Defendant, the persons entitled by law to recover damages for MR. ALQUIN's wrongful death, identified herein, have sustained the following damages and losses:

a. Funeral and estate expenses related to MR. ALQUIN's death;

b. Loss of the support, services, assistance, guidance and companionship of MR. ALQUIN;

c. Medical expenses;

d. Expenses incurred in the administration of MR. ALQUIN's Estate;

e. Lost future financial support; and

f. Other losses and damages recoverable by law.

WHEREFORE, PLAINTIFF, KAREN ALQUIN, Individually and as Administrator Pendente Lite of the ESTATE OF EUGENE W. ALQUIN, JR., claims all damages recoverable under the applicable laws of this Commonwealth against UNITED STATES OF AMERICA in a

sum in excess of the threshold amount for a board of arbitrators in this jurisdiction and demand a trial by jury.

## COUNT II – SURVIVAL
## PLAINTIFF
## -v-
## UNITED STATES OF AMERICA

39. PLAINTIFF incorporates Paragraphs 1 through 38 as if fully set forth herein.

40. As a direct and proximate result of the previously described negligence of Defendant, UNITED STATES, MR. ALQUIN suffered the following damages:

    a. Pain, suffering, anguish and inconvenience until the time of his death;

    b. Deprivation of his ability to enjoy the ordinary pleasures of life, from the time of injury until the time of her death;

    c. Impairment of his general health, strength and vitality, from the time of injury until the time of his death;

    d. Loss of past and future income and earning power; and

    e. Other losses and damages recoverable by law.

WHEREFORE, PLAINTIFF, KAREN ALQUIN, Individually and as Administrator Pendente Lite of the ESTATE OF EUGENE W. ALQUIN, JR., claims all damages recoverable under the applicable laws of this Commonwealth against UNITED STATES OF AMERICA in a sum in excess of the threshold amount for a board of arbitrators in this jurisdiction and demand a trial by jury.

Respectfully submitted,
OGG, MURPHY & PERKOSKY, P.C.

*/s/ Benjamin J. Gobel*

_____

Michael A. Murphy, Esquire
PA I.D. #55846
John D. Perkosky, Esquire
PA I.D. #83083
Benjamin J. Gobel, Esquire
PA I.D. #309670
Debra B. Parma, Esquire
PA. I.D. #328776

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500
(412) 471-8503 – Fax

**JURY TRIAL DEMANDED**.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN ALQUIN, Individually and as Administrator Pendente Lite of the Estate of EUGENE W. ALQUIN, JR., | : : : : | CIVIL DIVISION  No.: |
| Plaintiff, | : : | JURY TRIAL DEMANDED. |
| -v- | : : | |
| UNITED STATES, et al., | : : | |
| Defendants. | : | |

## **VERIFICATION**

I hereby verify that I have read the foregoing Complaint in Civil Action and that the statements contained therein are correct to the best of my personal knowledge, information, and belief. Further, I hereby verify that this pleading is based on information I furnished to counsel, as well as information gathered by counsel in the course of this lawsuit.

The language of this pleading is that of counsel and not of signer. To the extent that the contents of the pleading are that of counsel, I have relied upon counsel in making this Verification.

This statement and verification are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities, which provides that if we make knowingly false averments we may be subjected to criminal penalties.

_____
KAREN ALQUIN